STATE OF CONNECTICUT *v.* JOHN CASANOVA, JR.
(AC 17372)

Landau, Schaller and Sullivan, Js.

Argued June 7[1]—officially released September 7, 1999

*Jon L. Schoenhorn*, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, *John F. Cronan*, acting state's attorney, and *Brian Preleski*, assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, John Casanova, Jr., appeals from the judgment of conviction, rendered after a jury trial, of assault of a peace officer in violation of

---

[1] This appeal originally was argued on January 11, 1999, before Judges Landau, Sullivan and Kulawiz. Judge Kulawiz died before the appeal was decided, and the parties elected to reargue.

General Statutes (Rev. to 1995) § 53a-167c.[2] On appeal, the defendant claims that the trial court improperly (1) violated his rights to confront witnesses and present a defense by prohibiting certain cross-examination, and (2) abused its discretion by refusing to use the words requested by the defendant in its jury charge when instructing on the defendant's choice not to testify. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 9 a.m. on July 21, 1995, several members of the Southington police department were dispatched to the Casanova family residence to execute a warrant for the arrest of the defendant's younger brother, a minor. Although he was not part of the group of officers initially dispatched, Officer Lewis Palmieri was directed to go to the Casanova home to aid with an arrest. When Palmieri arrived, he spoke with Detective Craig Fournier about the situation.[3] Both men were dressed in plain clothes but were identifiable as police officers because their badges, handcuffs and weapons were visible.

Palmieri followed Fournier to the front door; Detective William Ludecke and Officer John Olson stood behind them. Palmieri held the screen door open as

[2] General Statutes (Rev. to 1995) § 53a-167c (a) provides in relevant part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . or (2) he throws or hurls, or causes to be thrown or hurled, any rock, bottle, can or other article, object or missile of any kind capable of causing physical harm, damage or injury, at such peace officer . . . or (3) he uses or causes to be used any mace, tear gas or any like or similar deleterious agent against such peace officer . . . or (4) he throws, hurls, or causes to be thrown or hurled, any paint, dye or other like or similar staining, discoloring or coloring agent or any type of offensive or noxious liquid, agent or substance at such peace officer . . . ."

[3] There is no evidence of what took place at the Casanova residence prior to Palmieri's arrival or why Palmieri was directed to help with the arrest.

Fournier stood inside the doorway talking to the defendant's father. The defendant's younger brother then exited the house and was taken into custody by Ludecke and Olson. Thereafter, Fournier informed the defendant's father that he was under arrest for interfering with a police officer. The defendant's father snickered, turned away from the officers and walked to the interior of the house.

Fournier and Palmieri followed the defendant's father into the kitchen in an effort to arrest him. As Palmieri was following Fournier, the defendant stepped into his path. Palmieri pushed the defendant aside and informed him not to interfere or that he, too, would be arrested. In the kitchen, Fournier and Palmieri struggled with the defendant's father. To subdue the defendant's father and to avoid injuries, Palmieri discharged pepper spray in the direction of the defendant's father. The defendant then struck Palmieri on the left side of the face. Palmieri sprayed the defendant with pepper spray, and the defendant fled to the second floor of the house and entered a bathroom. Palmieri pursued the defendant, told him that he was under arrest and instructed him to come out and to lie on the floor. The defendant did not cooperate. Palmieri went back downstairs. Additional police responded and eventually arrested the defendant.[4]

As a result of having been hit by the defendant, Palmieri sustained a cut on his face that had to be closed with sutures, blurred vision and sinus problems. The jury found the defendant guilty of assault of a peace officer, and the trial court rendered judgment on the verdict. This appeal followed. Additional facts will be discussed as necessary.

I

The defendant's first claim on appeal is that the trial court violated his rights to confront witnesses and to

[4] The defendant's father ultimately was arrested and charged with interfering with an officer in violation of General Statutes § 53a-167a.

present a defense by refusing to permit him to cross-examine Palmieri and Fournier about the legality of their having entered the defendant's home to arrest his father. The state argues that the legality of the police officers' entry to arrest the defendant's father is irrelevant to the defendant's arrest. We agree with the state.

The following procedural history is necessary for our analysis of this claim. Approximately six months before trial, a hearing was conducted on the defendant's motion to dismiss in which he claimed that the entry of police into his home was unlawful. The trial court denied that motion.[5] At trial, while cross-examining Palmieri and Fournier, the defendant attempted to question them about the police department's general policy concerning routine, warrantless arrests within a private

[5] The trial court stated in its memorandum of decision, "With regard to [the defendant], the statute with which he stands charged, § 53a-167c (a) provides in pertinent part: 'A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) such person causes physical injury to such peace officer . . . .'

"This court has difficulty attaching much credibility to [the defendant's] testimony. After testifying that he pulled a man off his father, [the defendant] said that he had 'no clue' as to who that man was or what his occupation was. Both police officers Fournier and Palmieri testified that they were in plain clothes consisting of a pair of slacks and a shirt with their police badges, handcuffs, handguns and holsters on their belts. There was no evidence that they wore jackets or otherwise covered these items which, in the court's opinion, are routinely worn by plainclothes police officers in the process of executing arrest warrants.

"The court finds that [the defendant], on the basis of the evidence presented, has not sustained his burden of proof that the entry of the police into his home was unlawful or that the evidence presented is insufficient to justify the bringing or continuing of the information, or his being placed on trial. The more credible evidence supports the likelihood that [the defendant] struck Officer Palmieri near the left eye while he was in the performance of his duty. Such conduct is not considered reasonable resistance even if the police entry was unlawful. *State* v. *Gallagher*, [191 Conn. 433, 465 A.2d 323 (1983)]. Accordingly, the defendant John Casanova, Jr.'s motion to dismiss is denied."

residence. The state objected, claiming that it was irrelevant and that the issue had been decided on the motion to dismiss. The defendant argued that the pretrial ruling was not binding on the trial court because whether the officers' entry into the Casanova home was lawful is a question of fact to be determined by the jury and that if the entry was unlawful, it is a defense to the charge of assaulting a peace officer because an element of the crime is that the officer must have been performing his official duties. The trial court precluded the defendant from inquiring into "issues surrounding the father's arrest, lawful versus unlawful entry, that is the subject matter of the motion to dismiss." The trial court, however, sustained the state's objection and concluded that the lawfulness of the arrest was not relevant to the crime with which the defendant was charged.[6]

Although he couches his claim in constitutional garb, the defendant's claim is an evidentiary one to which the abuse of discretion standard applies. See *State* v. *Hansen*, 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). "At the outset, we note that we will set aside a trial court's evidentiary ruling only where there has been a clear abuse of discretion. . . . To the extent that evidence offered in defense is relevant and mitigates a crime charged, it should not be excluded from the factfinder. . . . When defense evidence is excluded on evidentiary grounds, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is bound by the rules of evidence in presenting a defense, however. . . . If the proffered evidence is not relevant, it is properly excluded. . . . It is well established that, [e]vidence is relevant if it has a tendency

---

[6] Our review of the transcript leads us to conclude that the trial court's ruling was based on relevance, not the law of the case. The trial court reached its decision independently.

to establish the existence of material facts . . . . Evidence is not rendered inadmissible simply because it is not conclusive. It is admissible if it tends to support a relevant fact even in a slight degree." (Citations omitted; internal quotation marks omitted.) *In re Adalberto S.*, 27 Conn. App. 49, 57, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992).

"The elements of assault on a peace officer, General Statutes § 53a-167c (a) (1) are: (1) intent to prevent a reasonably identifiable peace officer from performing his duties; (2) the infliction of physical injury to the peace officer; and (3) the victim must be a peace officer. *State* v. *Kelly*, 23 Conn. App. 160, 172–74, 580 A.2d 520, cert. denied, 216 Conn. 831, 583 A.2d 130 (1990), cert. denied, 499 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991)." *State* v. *Raymond*, 30 Conn. App. 606, 610 n.4, 621 A.2d 755 (1993).

The defendant relies heavily on *State* v. *Gallagher*, 191 Conn. 433, 441, 465 A.2d 323 (1983), in which our Supreme Court noted that the legislature abrogated the common-law right to resist an unlawful arrest, but that the common-law privilege to resist an unlawful police entry remains. This distinction is significant here because it determines whether the defendant's proposed cross-examination was relevant. The facts show that the defendant assaulted Palmieri while Palmieri and Fournier were arresting the defendant's father. The defendant's act was not related to the officers' entry into the Casanova home. Therefore, the lawfulness of the entry is not relevant to the question of assault.

The facts of this case are distinguishable from *Gallagher*, where the defendant was charged with interfering with a police officer in violation of § 53a-167a. "We emphasize that the defendant herein was charged with the offense of interference with a police officer under General Statutes § 53a-167a, and not with assault. It is

in the context of a defense to a charge of interference that our case law has countenanced a defense of illegal police conduct. Where the defendant is charged with a different crime, a claim of a right to resist an unlawful arrest might be more difficult to reconcile with General Statutes § 53a-23 which provides: 'A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal.' Accord *United States* v. *Simon*, 409 F.2d 474, 477 (7th Cir.), cert. denied, 396 U.S. 829, 90 S. Ct. 79, 24 L. Ed. 2d 79 (1969); *United States* v. *Heliczer*, 373 F.2d 241, 245 (2d Cir. 1967); *State* v. *Hatton*, 116 Ariz. 142, 148, 568 P.2d 1040 (1977); *State* v. *Thomas*, 262 N.W.2d 607, 609–11 (Iowa 1978)." *State* v. *Gallagher*, supra, 191 Conn. 443 n.7.

For the sake of argument only, if Palmieri and Fournier entered the Casanova home illegally to arrest the defendant's father, the father may have a common-law defense. The defendant, however, assaulted Palmieri, not when he entered the home, but after Palmieri pepper sprayed the father during the arrest. Because the defendant assaulted the police officer while he was making an arrest, the legality of the officers' entry to the home is irrelevant.

The defendant also claims that he was entitled to have the jury determine whether Palmieri was performing his duty as a police officer or was on a frolic. "If [the officer] is acting under a good faith belief that he is carrying out [his] duty, and if his actions are reasonably designed to that end, he is acting in the performance of his duties. . . . The phrase in the performance of his official duties means that the police officer is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own." (Internal quotation marks omitted.) *State* v. *Torwich*, 38 Conn. App. 306, 315–16, 661 A.2d 113, cert. denied,

235 Conn. 905, 665 A.2d 906 (1995). Palmieri had been dispatched to the Casanova home to assist with the execution of an arrest warrant. While on the premises, Palmieri assisted Fournier in arresting the defendant's father as well. The jury could have determined, beyond a reasonable doubt, that Palmieri was not engaged in a frolic but was acting well within the confines of his duties as a police officer. The trial court, therefore, did not abuse its discretion in sustaining the state's objection to the defendant's cross-examination.[7]

## II

The defendant's second claim is that the trial court abused its discretion by refusing to use the words requested by the defendant in its charge to the jury to describe the fact that the defendant did not testify. Specifically, the defendant claims that the trial court abused its discretion by describing the defendant's choice to exercise his right not to take the stand in his own defense as a "failure to testify." The defendant's claim is without merit.

The following facts and procedural history are relevant to our analysis of this claim. Prior to charging the jury, the trial court gave counsel an opportunity to respond to issues they wanted addressed in the charge. The defendant's counsel objected to the proposed charge because it contained the phrase "failure to testify," which the defendant claimed had a negative connotation. The defendant claims that the word *failure* means deficiency or defeat, and that because he has a constitutional right not to testify, the language in question leads the jury to infer that by failing to testify, the defendant did something wrong.

---

[7] We also note that the defendant did not want the jury to know of his father's arrest and pending prosecution. The defendant cannot ask to have the legality of the officers' entry into his home determined and, at the same time, ask to exclude facts concerning his father's arrest.

The trial court instructed the jury as follows. "The defendant here has not testified in this case. An accused person has the option to testify or not to testify at the trial. He is under no obligation to testify. He has a constitutional right not to testify. You must not draw unfavorable inferences from the defendant's failure to testify." The state points out that the language in question is contained in General Statutes § 54-84 (b).[8]

The defendant's claim is controlled by our decision in *State* v. *Tyson*, 23 Conn. App. 28, 41–44, 579 A.2d 1083, cert. denied, 216 Conn. 829, 582 A.2d 207 (1990),[9] where the defendant made a similar request of the trial court to use a phrase other than "failure to testify" in its charge. In holding that the trial court did not abuse its discretion by charging in the language of the statute, we stated: "There is no rational justification for the defendant's position that the statutory language was an unacceptable alternative to his own suggested jury instructions. Recognizing that the jury may impermissibly hold the defendant's silence against him, § 54-84 (b) requires the court, even if not so requested, to give jury instructions to reduce speculation. *State* v. *Thurman*, 10 Conn. App. 302, 309, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). The statute thus protects the defendant's rights more stringently than either the federal or state constitution. *State* v. *Sinclair*, [197 Conn. 574, 585, 500 A.2d 539 (1985)]. A court's failure to comply with § 54-84 (b) is plain error; id., 582; and deviations altering the meaning of the charge are grounds for reversal. *State* v. *Tatem*, [194 Conn. 594,

---

[8] General Statutes § 54-84 (b) provides: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

[9] The defendant asks us to overrule *Tyson*. Our Supreme Court denied certification in *Tyson*, and the case was cited with approval in *State* v. *Dickerson*, 28 Conn. App. 290, 297, 612 A.2d 769 (1992).

595, 483 A.2d 1087 (1984)]. We do not read [*State* v. *Wright*, 197 Conn. 588, 594–95, 500 A.2d 547 (1985)] as suggesting that a defendant's request for modification is binding on the court or that using the statutory language despite a request for modification constitutes reversible error." *State* v. *Tyson*, supra, 42. We conclude, therefore, that the trial court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.