# STATE OF CONNECTICUT *v.* JOHN CASANOVA, JR.
## (SC 16217)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued September 19, 2000—officially released April 3, 2001

*Jon L. Schoenhorn*, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, John Casanova, Jr., appeals, following our grant of certification, from the judgment of the Appellate Court, which affirmed the trial court's judgment of conviction for assault of a peace officer in violation of General Statutes (Rev. to 1995) § 53a-167c.[1] On appeal to the Appellate Court, the defendant had claimed that the trial court improperly: (1) denied him his right to cross-examine the state's witnesses and to present a defense by excluding cross-examination pertaining to the entry of two police officers into the defendant's home; and (2) refused to use "neutral" language in its jury charge, as requested by the

---

[1] General Statutes (Rev. to 1995) § 53a-167c (a) provides in relevant part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ." Section 53a-167c was amended by No. 98-41 of the 1998 Public Acts and by No. 99-26, § 28, and No. 99-204 of the 1999 Public Acts. Those revisions, however, are technical in nature and are not relevant to any of the issues presented in this appeal. For purposes of clarity, references herein are to the 1995 revision of the statutes, the revision in effect at the time of the offenses in this case.

defendant, and instead characterized the defendant's choice not to take the stand in his own defense as a "failure to testify." *State* v. *Casanova*, 54 Conn. App. 714, 716, 738 A.2d 668 (1999). The Appellate Court affirmed the judgment of the trial court; id., 724; and we granted the defendant's petition for certification to appeal to this court. *State* v. *Casanova*, 251 Conn. 919, 742 A.2d 359 (1999).

We granted certification limited to the following three issues: (1) "Did the Appellate Court properly conclude that the behavior of [the] police officers was irrelevant to a prosecution under General Statutes § 53a-167c, and therefore preclusion of evidence of same did not violate the defendant's state and federal constitutional rights?"; (2) "Did the Appellate Court properly conclude that General Statutes § 54-84 (b) does not permit a trial court to alter the language pertaining to the defendant's 'failure to testify' despite a specific request by the defendant not to use that phrase because of its negative connotation?"; and (3) "If the answer to question two is yes, should this court exercise its supervisory authority to substitute neutral language under General Statutes § 54-84 (b) when requested by the defendant?" Id. We answer the first question in the negative, and, therefore, we reverse the judgment of the Appellate Court.[2]

The jury reasonably could have found the following facts. At approximately 9 a.m. on July 21, 1995, three Southington police officers, Detective Craig Fournier, Detective-Sergeant William Ludecke, and Officer John Olson, arrived at the Casanova residence to execute an arrest warrant for the defendant's younger brother, a juvenile. Soon thereafter, Ludecke requested that Offi-

_____

[2] Although our disposition of the defendant's first claim will require a new trial, we will address the second question because it is likely to arise on the remand. Further, based on our resolution of the second question, we reject the defendant's third claim.

cer Lewis Palmieri come to the residence to aid the officers in serving the arrest warrant on the defendant's younger brother.

When Palmieri arrived, he followed Fournier to the front door of the Casanova residence.[3] Both men were dressed in plainclothes with their badges, sidearms and handcuffs visibly mounted on their belts. Palmieri stood on the concrete steps to the house and held the exterior screen door open as Fournier stood in the doorway and spoke with the defendant's father, John Casanova, Sr. Olson and Ludecke stood behind Palmieri and Fournier.

With his juvenile son standing behind him, Casanova, Sr., questioned Fournier about the charges pending against his juvenile son and what was going to happen to him. After a few minutes, the juvenile son was released into the officer's custody. Fournier stepped into the Casanova house to take custody of the juvenile son and then sent him down the steps into the custody of Ludecke and Olson. Fournier then informed Casanova, Sr., who had remained in the house during the officers' visit, that he was under arrest for interfering with a police officer. Casanova, Sr., snickered, turned away from the officer, and walked toward the interior of the house. Fournier told Casanova, Sr., to stop. When Casanova, Sr., kept walking toward the rear of the house, Fournier followed him to place him under arrest. Palmieri then proceeded after Fournier and, as he walked toward the rear of the house, the defendant, the teenage son of Casanova, Sr., stepped into Palmieri's path. Palmieri pushed the defendant aside and warned him not to interfere or he also would be arrested. The officers followed Casanova, Sr., into the kitchen, where a struggle began when the officers attempted to take him into custody.

[3] There was no evidence presented to the jury regarding what had transpired before Palmieri arrived at the Casanova residence.

In order to subdue Casanova, Sr., Palmieri discharged two bursts of pepper spray in his direction.[4] The defendant then struck Palmieri on the left side of the face

[4] There is a dispute between the parties as to whom Palmieri sprayed with the first bursts of pepper spray. The state maintains that Palmieri first sprayed Casanova, Sr. The defendant argues that Palmieri, without provocation, sprayed him first, which then led to the punch delivered by the defendant to Palmieri. The dispute derives from the following colloquy between Palmieri and the assistant state's attorney:

"Q. Now you're in the kitchen, and you observe a struggle. What do you do?

"A. I assist Detective Fournier.

"Q. How did you assist Detective Fournier?

"A. By trying to take Mr. Casanova and retain him, put handcuffs on him.

"Q. And what happened next?

"A. He was struggling with us. He resisted our trying to take him into custody.

"Q. What did you do in response to that?

"A. A struggle started. We were moving around the kitchen. It was at one point, I thought that I should be using my pepper spray. That is when I delivered two quick bursts, two, two quarter second bursts to Mr. Casanova, *Jr.*

"Q. And what happened next?

"A. The next thing was, out of the corner of my eye, I saw a blur come at me. I was struck on my left eye area.

"Q. Okay.

"A. Continuing on, that is when I saw Mr. Casanova, Jr., follow through after I was struck." (Emphasis added.)

It is apparent, based on the entire record, that Palmieri misspoke when he used the word "Jr." in the preceding colloquy. This is evidenced by several of Palmieri's responses to similar questions posed by the defense. The following exchange between defense counsel and Palmieri is one such example:

"Q. You didn't get [Mr. Casanova, Sr.] under control in the kitchen?

"A. No, we didn't.

"Q. In fact, it was so difficult to get him under control that when Detective Fournier was grabbing ahold of him, you took out your mace or pepper spray to spray two quick bursts at John Casanova, *Sr.*, to try to get him in the face to try to get him under control?

"A. I tried to spray him—Detective Fournier—I don't recall having him as you indicated.

"Q. Where was Detective Fournier when you sprayed your spray at Sr.?

"A. On the side of him." (Emphasis added.)

Additionally, neither party questioned the witnesses on whether Palmieri had sprayed the defendant before being struck. Further, during closing arguments, both parties recounted that Palmieri had sprayed the defendant

with a closed fist. Palmieri turned and sprayed a burst of pepper spray at the defendant as he fled from the officer. Palmieri followed the defendant to a bathroom on the second floor of the house. The defendant slammed the bathroom door shut. Palmieri told the defendant he was under arrest and ordered him to exit the bathroom. When the defendant opened the door, Palmieri repeated that the defendant was under arrest and ordered him to lie on the floor and put his hands behind his back. The defendant directed an expletive at Palmieri and then lunged toward the officer. Palmieri responded by discharging another burst of pepper spray at the defendant. The defendant again retreated into the bathroom. Palmieri then went downstairs to check on the situation with Casanova, Sr. Soon thereafter, additional police officers responded and eventually arrested the defendant.[5]

As a result of being struck by the defendant, Palmieri received a cut under his left eye that required five sutures to close. Palmieri also had other complications attributable to the defendant's blow, including dryness of the eye, blurred vision and sinus problems. After the jury found the defendant guilty, he was sentenced to a term of twelve months incarceration and fined. This appeal followed.

I

The defendant first claims that the Appellate Court improperly affirmed the ruling of the trial court, *Norko, J.*, prohibiting the defendant from cross-examining the police officers concerning their entry into the Casanova

with pepper spray only *after* Palmieri had been struck in the face. The lack of response by both parties to Palmieri's statement during the trial also leads to the conclusion that the disputed statement set forth in the preceding colloquy—Palmieri's first reference to "Jr."—is likely a mistake in the transcript.

[5] The Southington police also arrested Casanova, Sr., and charged him with interfering with an officer in violation of General Statutes § 53a-167a.

home. The evidence regarding the police officers' entry into the home had been the subject of a pretrial motion to dismiss heard by the court, *Barry, J.* Specifically, the defendant claims that Judge Norko, on the basis of the denial of the defendant's motion to dismiss by Judge Barry, improperly excluded evidence that pertained to the entry of the two police officers into the defendant's residence prior to their scuffle with the defendant. The defendant claims that the trial court's ruling prevented him from cross-examining the police officers regarding an element of the charge against him and thereby denied him his state and federal constitutional rights to confrontation and cross-examination of adverse witnesses, and his right to present a defense.[6] We agree.

The following procedural history is relevant to this claim. Prior to trial, the defendant moved to dismiss the state's information on the ground, inter alia, that the officers' entry into the Casanova home had been unlawful, and that the subsequent arrest of the defendant had been unjustified. Specifically, the defendant claimed that under *State* v. *Gallagher*, 191 Conn. 433, 440–42, 465 A.2d 323 (1983), he had the common-law privilege to resist the officers because they had unlawfully entered the Casanova residence without a warrant.[7] After an evidentiary hearing, Judge Barry denied the motion, concluding: "[The defendant did not sustain] his burden of proof that the entry of the police

[6] The defendant invoked both the federal constitution and the constitution of Connecticut. "He [however] has proffered no argument that the rights afforded to him by the federal and the state constitutions are in any way distinguishable with respect to the substantive issue that he has raised. We see no reason, on the facts of this case, independently to undertake such an analysis." (Internal quotation marks omitted.) *State* v. *Birch*, 219 Conn. 743, 746 n.4, 594 A.2d 972 (1991).

[7] In *State* v. *Gallagher*, supra, 191 Conn. 441, this court held that although the state legislature had abrogated the common-law right to resist an unlawful arrest, the common-law right to resist an unlawful police entry remains intact.

into his home [had been] unlawful or that the evidence presented [by the state was] insufficient to justify the bringing or continuing of the information or placing him on trial. The more credible evidence supports the likelihood that [the defendant] struck Officer Palmieri near the left eye while he was in the performance of his duty. Such conduct is not considered reasonable resistance even if the police entry was unlawful."

At trial before Judge Norko, the defendant attempted to cross-examine Palmieri about the Southington police department's general procedures for warrantless arrests within a private residence. The state objected on the ground that the circumstances that had surrounded the arrest of Casanova, Sr., were irrelevant and that the pertinent issues were whether the defendant had assaulted Palmieri, whether Palmieri had been reasonably identifiable as a peace officer, and whether Palmieri had been performing his duties when the defendant assaulted him. Furthermore, the state argued, the evidence concerning the legality of the police officers' entry into the Casanova home had been excluded previously when Judge Barry denied the defendant's *Gallagher* claim in his motion to dismiss.

The defendant argued that the legality of Palmieri and Fournier's entry was essential for the jury's determination of whether the officers actually had acted within the bounds of their official duties. Additionally, the defendant argued that the trial court's pretrial denial of his motion to dismiss did not invoke the doctrines of collateral estoppel, res judicata, or the law of the case. Thus, the defendant argued, the trial court's pretrial decision did not preclude him from proffering to the jury the same evidence that he had offered during the pretrial hearing. On the basis of irrelevancy and,

primarily, on the law of the case doctrine,[8] the trial court agreed with the state and excluded all evidence concerning the propriety of Palmieri and Fournier's entry into the Casanova home.

The following day, the defendant requested that the court reconsider its ruling with regard to the evidence surrounding the legality of the officers' entry into the Casanova residence. The defendant argued that whether the police officers had entered the Casanova residence in the performance of their duties was an element of the crime charged against the defendant and a question of fact for the jury. The defendant claimed that the trial court's ruling from the previous day therefore had prevented him from cross-examining the officers with regard to this element of § 53a-167c. The defendant also reasserted his claim that Judge Barry's denial of the motion to dismiss based on *Gallagher* did not preclude the defendant from offering to the jury the same evidence that he had offered during the pretrial motion, which had pertained to the legality of the officers' entry. Thus, the defendant argued, the trial court's ruling violated his state and federal constitutional rights to a fair trial and to a jury trial. Judge Norko noted the defendant's argument for the record, but declined to reconsider his previous ruling.

After the state presented its case-in-chief, the defense made a motion for acquittal, again arguing the importance of exploring the officers' entry into the defendant's home. This time, the defendant directed the trial court's attention to *State* v. *Privitera*, 1 Conn. App. 709, 476 A.2d 605 (1984), and *State* v. *Biller*, 5 Conn. App.

---

[8] The law of the case doctrine provides that "[w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982).

616, 501 A.2d 1218 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146, cert. denied, 478 U.S. 1005, 106 S. Ct. 3296, 92 L. Ed. 2d 711 (1986), and clarified his previous arguments, stating: "One of [the] elements [of § 53a-167c (a) (1)] is that [a] peace officer [must] be performing his duty at the time the alleged offense occurred. . . . I have attempted [repeatedly] to have the court allow the defendant to put on evidence that the entry into the Casanova household was not in the performance of [the officers'] duties and the officers . . . entered the household, not in a good faith entrance . . . [but in] a frolic . . . . [When they entered the house], the officers were no longer performing their duty or acting in the performance of their duties. They were in the household . . . illegally, and could not have had a good faith basis to prove otherwise. . . . The evidence would have shown that [the entry] was either a frolic or [due to the] personal intent of the officers involved [that led them] to pursue Mr. Casanova, Sr., into the household, which led them into what they claimed to be direct contact with [the defendant]." The trial court denied the motion for acquittal. The Appellate Court subsequently affirmed the judgment of the trial court.[9] *State* v. *Casanova*, supra, 54 Conn. App. 724.

The defendant maintains that the trial court's decision to exclude cross-examination concerning the offi-

---

[9] The Appellate Court affirmed the trial court's ruling on the ground that the defendant's claim concerning the relevancy of the officers' entry essentially had been based on *State* v. *Gallagher*, supra, 191 Conn. 433. *State* v. *Casanova*, supra, 54 Conn. App. 720. Therefore, the Appellate Court's ruling that evidence of the officers' entry was irrelevant was based in part on its conclusion that the defendant was not fending off an unlawful entry, but an unlawful arrest. Id. The defendant, however, has made clear to this court, in his brief and at oral argument, that his claim that the officers' entry was relevant is not grounded upon *Gallagher*. On the basis of *State* v. *Privitera*, supra, 1 Conn. App. 714–16, and *State* v. *Torwich*, 38 Conn. App. 306, 315–16, 661 A.2d 113, cert. denied, 235 Conn. 905, 665 A.2d 906 (1995), the defendant claims that the propriety of the officers' entry was relevant to whether Palmieri had been acting in good faith in the performance of his duties.

cers' entry into the defendant's home prevented him from presenting relevant evidence to the jury to show that the officers were engaged in a personal "frolic" and were not acting in good faith performance of their duties. Thus, the defendant claims that the trial court denied him his constitutional rights to confrontation and to present a defense under the sixth[10] and fourteenth[11] amendments to the United States constitution.

We will set aside a trial court's evidentiary ruling only when there has been a clear abuse of its discretion. *State* v. *Provost*, 251 Conn. 252, 257, 741 A.2d 295 (1999), cert. denied, 531 U.S. 822, 121 S. Ct. 65, 148 L. Ed. 2d 30 (2000); *State* v. *Thomas*, 205 Conn. 279, 283, 533 A.2d 553 (1987). The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and "[e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." *State* v. *Barnes*, 232 Conn. 740, 746–47, 657 A.2d 611 (1995). "To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Internal quotation marks omitted.) *State* v. *Castro*, 196 Conn. 421, 426, 493 A.2d 223 (1985).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 305, 664 A.2d 743 (1995). "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Inter-

---

[10] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[11] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

nal quotation marks omitted.) *State* v. *Barnes*, supra, 232 Conn. 747. When the trial court excludes defense evidence that provides the defendant with a basis for cross-examination of the state's witnesses, however, such exclusion may give rise to a claim of denial of the right to confrontation and to present a defense. *State* v. *DeCaro*, 252 Conn. 229, 258, 745 A.2d 800 (2000); *State* v. *Colton*, 227 Conn. 231, 249, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).

General Statutes (Rev. to 1995) § 53a-167c (a) provides in relevant part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ." To prove a violation of § 53a-167c (a) (1), the state must establish: "(1) [I]ntent to prevent a reasonably identifiable peace officer from performing his duties; (2) the infliction of physical injury to the peace officer; and (3) the victim must be a peace officer." *State* v. *Raymond*, 30 Conn. App. 606, 610 n.4, 621 A.2d 755 (1993).

The defendant claims that the trial court, by excluding cross-examination concerning the officers' entry into the Casanova home, denied him the opportunity to present evidence relevant to part of the first element delineated previously, namely, whether Palmieri had been performing his duties when he was struck by the defendant.

"[A] police officer has the duty to enforce the laws and to preserve the peace. Whether he is acting in the performance of his duty . . . must be determined in the light of that purpose and duty. If he is acting under a good faith belief that he is carrying out that duty,

and if his actions are reasonably designed to that end, he is acting in the performance of his duties. . . . Although from time to time a police officer may have a duty to make an arrest, his duties are not coextensive with his power to arrest. [His] official duties may cover many functions which have nothing whatever to do with making arrests. . . . The phrase in the performance of his official duties means that the police officer is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own. . . . These are factual questions for the jury to determine on the basis of all the circumstances of the case and under appropriate instructions from the court." (Citations omitted; internal quotation marks omitted.) *State* v. *Privitera*, supra, 1 Conn. App. 722; see also *United States* v. *Hoy*, 137 F.3d 726, 729 (2d Cir.), cert. denied, 525 U.S. 850, 119 S. Ct. 124, 142 L. Ed. 2d 100 (1998); *United States* v. *Martinez*, 465 F.2d 79, 82 (2d Cir. 1972); *United States* v. *Michalek*, 464 F.2d 442, 443 (8th Cir. 1972); *United States* v. *Heliczer*, 373 F.2d 241, 245 (2d Cir.), cert. denied, 388 U.S. 917, 87 S. Ct. 2133, 18 L. Ed. 2d 1359 (1967); *State* v. *Torwich*, 38 Conn. App. 306, 315–16, 661 A.2d 113, cert. denied, 235 Conn. 905, 665 A.2d 906 (1995). Although the court in *Privitera* used the preceding language with regard to its discussion of the correlation between General Statutes §§ 53a-23 and 53a-167a (a), the analysis is also applicable to the same language in § 53a-167c, "in the performance of his . . . duties . . . ."[12]

In the present case, whether Palmieri had entered the Casanova home in the performance of his duties

---

[12] The Appellate Court had reached this conclusion previously through a trilogy of opinions, beginning with *State* v. *Privitera*, supra, 1 Conn. App. 722, followed by *State* v. *Biller*, supra, 5 Conn. App. 620, and culminating in the application of the *Privitera/Biller* analysis of § 53a-167a to § 53a-167c in *State* v. *Torwich*, supra, 38 Conn. App. 315–16.

was part of a required element of the offense charged against the defendant. The state, therefore, had the burden to prove this element beyond a reasonable doubt. By excluding evidence relating to Palmieri's entrance into the Casanova home, the trial court improperly deprived the defendant of the opportunity to cross-examine him with regard to whether Palmieri, in good faith, had been acting within the scope of his duties. See *In re Adalberto S.*, 27 Conn. App. 49, 57–59, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992).

The trial court also incorrectly excluded the evidence based on the law of the case doctrine.[13] That doctrine is inapplicable here because the issue raised by the pretrial motion to dismiss was different from the evidentiary issue subsequently presented to the trial court. In his motion to dismiss, the defendant contended that the officers' entry into his house had been unlawful and his arrest, therefore, had been unjustified. The issue at trial was whether Palmieri had been acting in the performance of his duties, an element of the offense of assault of a peace officer. We conclude, therefore, that the trial court improperly deprived the defendant of the opportunity to cross-examine Palmieri as to whether he was acting in the performance of his duties when he was struck by the defendant, in violation of the defendant's state and federal constitutional right to confrontation and his right to present a defense.[14]

We next must inquire whether the improper exclusion of this evidence entitles the defendant to a new trial.

---

[13] As we have indicated; see footnote 8 of this opinion; the law of the case doctrine "expresses the practice of judges generally to refuse to reopen what has been decided . . . ." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982).

[14] We note that even if the trial court was justified in following the law of the case doctrine, the question on appeal in such a case is whether the law that was applied was correct. *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982).

Although the outright denial of a defendant's opportunity to cross-examine a witness on an element of the charged offense implicates the constitutional protection of the confrontation clause, such a denial is subject to harmless error analysis. See *State* v. *Colton*, supra, 227 Conn. 253; *Demers* v. *State*, 209 Conn. 143, 160, 547 A.2d 28 (1988). A new trial is required only if the exclusion of the proffered evidence is not harmless beyond a reasonable doubt. *State* v. *Colton*, supra, 253.

"Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Citations omitted; internal quotation marks omitted.) Id., 254.

The state contends that any error on the part of the trial court was harmless beyond a reasonable doubt. The state claims that Palmieri was acting within the scope of his employment because he properly had been dispatched to the Casanova home to assist in the execution of a proper arrest warrant. The state also claims that the defendant aggressively cross-examined the officers regarding inconsistencies between their testimony and police reports. Further, the state claims that the defendant elicited sufficient facts from the officers regarding the circumstances surrounding their entry into the Casanova home that permitted the jury to find that the officers had been engaged in a personal frolic provoked by the snickering of Casanova, Sr.

The first part of the state's analysis is overbroad. If we were to adhere to the state's test for whether an officer was acting within the scope of his employment, then, every time the police properly dispatched an officer to a scene, all of the officer's actions thereafter would be considered within the performance of his or her official duties. Moreover, the defendant's desired line of inquiry was relevant to an element of the offense charged. Although the defendant elicited on cross-examination that the officers entered the defendant's home once Casanova, Sr., had turned from them and had snickered at them, by excluding cross-examination concerning the officers' entry, the trial court prevented the defense from presenting evidence to the jury that could have shown that Palmieri had not entered the home in the good faith performance of his duties. This is an essential element of the charged offense, bearing on Palmieri's motivation behind his entry. In addition, because the defendant chose to exercise his right not to testify or otherwise to present evidence, the testimony of the officers was the only account of the incident heard by the jury. The defendant was clearly prejudiced by the exclusion of this evidence. We, therefore, cannot conclude that the trial court's ruling was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment of the Appellate Court and remand the case to the trial court for a new trial.[15]

We emphasize the limits of our holding. We do not hold that, merely because police may have acted ille-

---

[15] Our holding does not conflict with our earlier decisions that a defendant has no legal right to resist an arrest by means of physical force. See *State* v. *Brosnan*, 221 Conn. 788, 796, 803, 608 A.2d 49 (1992); *State* v. *Gallagher*, supra, 191 Conn. 441. General Statutes § 53a-23 provides: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal." The crux of the proffered evidence in this case, although not dispositive of the issue, is whether the officers were performing their official duties at the time they entered the Casanova home and were not engaged in a personal frolic.

gally in making a warrantless arrest, they were not acting within the performance of their duties. That would not be enough, in and of itself, to justify a conclusion that they were engaging in a personal frolic. When, however, as here, the defendant seeks to cross-examine the police regarding the purported illegality of an entry into the home and their motives for engaging in that conduct, in order to undermine the state's contention that they were acting in the performance of their duties, the defendant must be given reasonable leeway to do so.

## II

The defendant next claims that the Appellate Court improperly affirmed the trial court's decision not to use substitute language without "negative connotation" during its instructions to the jury concerning the defendant's right not to testify. In particular, the defendant claims that the trial court abused its discretion by using the language, "failure to testify," from § 54-84 (b),[16] instead of more neutral language as he had requested. We disagree with the defendant's claim.[17]

The following facts and procedural history are relevant to this claim. Prior to closing arguments, the trial court asked the parties if they had any issues to raise with respect to its proposed charge to the jury. The defendant objected to the court's use of the language "failure to testify" to describe the defendant's decision not to testify. The defendant argued that use of the word "failure" had a negative connotation. The defendant

[16] General Statutes § 54-84 (b) provides in relevant part: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. . . ."

[17] Alternatively, the defendant asks this court to use its supervisory authority to allow substitute language for that authorized by § 54-84 (b) when such language is requested by a defendant. For the reasons set forth subsequently herein, we do not believe that the challenged instruction was improper in any way. We therefore reject the defendant's supervisory authority claim.

requested, therefore, that the court substitute neutral language for the statutory language, but did not suggest or request any specific substitute language.[18] The state responded to the defendant's request by noting that the language in the court's jury charge was the precise language of § 54-84 (b).

The trial court overruled the defendant's objection with regard to the failure to testify language.[19] On appeal, the Appellate Court concluded that the trial court had not abused its discretion by including the statutory language in its charge. *State* v. *Casanova*, supra, 54 Conn. App. 724.

The defendant claims that the word failure is "intertwined with the concept of deficiency or defeat" and, therefore, suggests that the defendant "did something wrong by not testifying." He argues that, because of the word's correlation with "negative" words, the court's use of the word failure with regard to the defen-

---

[18] When the defense made its request to the trial court to use neutral language to replace the word "failure," it did not suggest any specific or special language for the court to consider, as demonstrated in the following exchange:

"The Court: Both counsel and the accused are present. Either side have anything to put on the record at this particular period of time about the court's charge?

"[Defense Counsel]: Regarding the defendant's failure to testify. . . . I will take issue with two small points. I'll put that on record regarding the words 'failure to testify.' I think it has a negative connotation. The [defendant has] exercised his right not to testify, which . . . is within this charge. The title on the charge in the last sentence indicates [however] that the defendant has somehow failed to do something by not testifying.

"He has in fact exercised his constitutional right not to testify. If we can maybe take what I perceive as a somewhat prejudicial [word] out of [the charge] and replace it with another term or phrase, I wouldn't have any objection to that charge."

[19] The trial court later instructed the jury: "The defendant here has not testified in this case. An accused person has the option to testify or not to testify at the trial. He is under no obligation to testify. He has a constitutional right not to testify. You must not draw unfavorable inferences from the defendant's failure to testify."

dant's decision not to testify in effect countered the protection of his constitutional right not to testify, which prohibits the jury from drawing inferences of guilt from the failure to testify.

"To determine whether an error in a [jury] charge constitutes reversible error, the court must consider the whole charge. . . . In considering the charge as a whole we eschew critical dissection . . . thereby not passing upon the instructions attacked in artificial isolation from the whole charge. . . . The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." (Internal quotation marks omitted.) *State* v. *Marra*, 195 Conn. 421, 440–41, 489 A.2d 350 (1985).

"A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request [however] will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *State* v. *Gant*, 231 Conn. 43, 47, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995). Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions. See *State* v. *Ortiz*, 252 Conn. 533, 562–63, 747 A.2d 487 (2000); *State* v. *Harrell*, 199 Conn. 255, 268–70, 506 A.2d 1041 (1986); *State* v. *Shindell*, 195 Conn. 128, 143, 486 A.2d 637 (1985); *State* v. *Falcone*, 191 Conn. 12, 26, 463 A.2d 558 (1983); *State* v. *Estep*, 186 Conn. 648, 653, 443 A.2d 483 (1982).

Considering the entire charge with respect to the defendant's decision not to testify; see footnote 19 of this opinion; we conclude that the instruction was neither negative in substance nor improper. The court referred to the defendant's decision not to testify in

four different ways. First, the trial court instructed the jury that the defendant had "the *option* to testify or not to testify at the trial." (Emphasis added.) Second, the trial court charged the jury that the defendant was "under *no obligation* to testify." (Emphasis added.) Third, the trial court charged the jury that the defendant had "a *constitutional right* not to testify." (Emphasis added.) Only in the last sentence of its instruction did the trial court use the arguably negative phrase "failure to testify." Accordingly, we conclude that the charge as a whole, including the affirmative language as emphasized herein, was neutral in substance and appropriately guided the jury to a proper verdict.

We also disagree with the implication in the defendant's brief that the language in § 54-84 (b) that provides "[u]nless the accused requests otherwise" means that the trial court *must* accept the instruction requested by a defendant when he chooses not to testify. More specifically, the statutory language provides that "[u]nless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify." General Statutes § 54-84 (b). A party always may take exception to the trial court's jury charge or request that the trial court modify its language. See Practice Book §§ 42-19 and 42-24. The language "unless the accused requests otherwise," however, permits the defendant to elect whether the court should give the jury an instruction concerning the defendant's failure to testify. See *State* v. *Holloway*, 209 Conn. 636, 651, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989).[20] We have not interpreted that lan-

---

[20] In *State* v. *Marra*, supra, 195 Conn. 442, where a defendant similarly claimed that a trial court improperly charged the jury with respect to his failure to testify, this court stated: "In this case, however, the defendant did 'request otherwise.' He filed two requests to charge on this issue, one of which included the instruction that '[n]o inference or taint should be derived from [the defendant's] failure to testify.' The other requested instruction included the adjective 'unfavorable' as modifying the word 'inference.'"

guage to mean that the court *must* use the defendant's requested language.

The Appellate Court properly concluded that the trial court did not abuse its discretion by deciding not to substitute the language from § 54-84 (b) with neutral language. *State* v. *Casanova,* supra, 54 Conn App. 724. The trial court properly charged the jury in compliance with § 54-84 (b) by using the exact language from the statute. See *State* v. *Wright,* 197 Conn. 588, 594, 500 A.2d 547 (1985) (finding trial court's use of exact language of § 54-84 [b] proper).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case for a new trial.

In this opinion the other justices concurred.

The court ultimately held that the trial court acted properly because it found that it was not reasonably possible that the jury was misled by the trial court's decision not to include the defendant's suggestion in its charge. Id., 444–45. Although our ultimate decision today is in harmony with our holding in *Marra,* we clarify the language "requests otherwise" in § 54-84 (b) with today's explanation of the phrase.