STATE OF CONNECTICUT *v.* ALLEN ISABELLE
(AC 28228)

DiPentima, McLachlan and West, Js.

---

598

Argued February 5—officially released May 13, 2008

*Douglas J. Lewis*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, was *Stephen J. Sedensky III*, state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Allen Isabelle, appeals from the judgments of conviction of reckless driving, failure to display number plates, failure to carry an insurance card and interfering with an officer. The reckless driving and interfering with an officer counts were tried to the jury, and the infractions of failure to display number plates and failure to carry an insurance card were tried to the court. On appeal, the defendant claims that the court abused its discretion by denying his motion in limine to introduce certain evidence.[1] We conclude that the court did not abuse its discretion and, accordingly, affirm the judgments of the trial court.

The court and the jury reasonably could have found the following facts. On March 14, 2006, Bethel police Officers James Christos and Stephen Pugner were patrolling the streets of Bethel in a marked patrol car. At approximately 2:30 p.m., as they drove southwest on Plumtrees Road, they observed a dump truck towing a wood chipper on a trailer heading in the opposite direction. The dump truck appeared to be speeding and,

---

[1] The defendant further claims that the court abused its discretion in denying his motion to consolidate the charges in these two cases with a separate information that was pending before the court. At oral argument before this court, the defendant's counsel conceded that during the pendency of this appeal, the defendant had pleaded guilty to the charges in the separate information and had paid the fines imposed by the court. Because those fines have been paid, the court may no longer open that judgment. See *State* v. *Arpi*, 75 Conn. App. 749, 752–53, 818 A.2d 48 (2003). Thus, no separate charges remain with which this case may be consolidated. Accordingly, there is no practical relief that the defendant may be afforded as to this claim, and, therefore, we decline to review it, as it is moot. See *Gerlt* v. *South Windsor*, 284 Conn. 178, 189, 931 A.2d 907 (2007).

as they drove past it, the officers could not determine whether it was displaying proper license plates. Christos turned his patrol car around, and the officers pursued the dump truck. The officers ordered the dump truck to stop near the intersection of Walnut Hill Road and Hoyt Road. Upon further observation, the officers determined that both the dump truck and trailer, in fact, were displaying license plates but that the trailer was obscuring the dump truck's plates and that a metal object and dirt were obscuring the trailer's plates.

Pugner exited the patrol car and approached the driver's side door of the truck. As he approached the truck, Pugner observed a wire dangling from the rear of the trailer. Pugner asked the defendant, who was in the driver's seat, for his operator's license, vehicle registrations and insurance card. The defendant complied; however, the insurance card that he surrendered to Pugner had expired. Pugner also asked the defendant to shut off the truck's engine and surrender the keys because he believed that the defendant had attempted to drive away from another Bethel police officer, Officer Michael Conroy, during a prior traffic stop. The defendant became agitated and refused to comply with Pugner's request. Pugner then returned to the patrol car to check the validity and the history of the defendant's license and registrations.

After the initial exchange between Pugner and the defendant, the officers conducted an inspection of the trailer. The officers observed the wire that Pugner had noticed earlier, and it appeared to Pugner that the wire had been disconnected from the trailer's independent brake system. They further observed that the wire was not connected to the dump truck or to any other source that could have provided power to the trailer's brakes. In addition, the officers discovered that the trailer's factory installed brake lights were inoperable, but the

defendant had mounted on the trailer temporary brake lights that were functioning properly.

Following his inspection of the trailer, Pugner returned to the driver's side door of the truck. Pugner asked the defendant to demonstrate whether the trailer's brakes were operational. The defendant again refused to comply. Subsequently, Pugner informed the defendant that he intended to issue the defendant a citation and summons for reckless driving, driving with obstructed license plates and failing to carry a valid insurance card. Pugner, however, offered to drop the citation for reckless driving if the defendant could demonstrate that the trailer's brakes functioned properly. The defendant declined Pugner's invitation after unsuccessfully negotiating for a withdrawal of all the charges. Upon presentation of the citation and summons by Pugner, the defendant refused to divulge his social security number and, instead of signing his name, signed the summons with an "X."

The officers called a tow truck to remove the defendant's truck and trailer from the scene. The defendant finally relinquished the keys to his truck once the tow truck arrived, but he remained combative. At some point, he had exited his truck and repeatedly walked into the path of traffic, ignoring the officers' instructions to stay off the road. Before the officers released him at the scene, the defendant warned the tow truck driver: "There's still no brakes [on the trailer] with you towing it."

The state filed an amended long form information charging the defendant with reckless driving in violation of General Statutes § 14-222 (a),[2] failure to display number plates in violation of General Statutes § 14-18 (a) (1)

[2] General Statutes § 14-222 (a) provides in relevant part: "No person shall operate any motor vehicle upon any public highway of the state, or any road of any specially chartered municipal association or of any district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks . . . recklessly

and (c),[3] failure to carry an insurance card in violation of General Statutes § 14-13 (a)[4] and interfering with an officer in violation of General Statutes § 53a-167a (a).[5] After a trial on October 31 and November 1, 2006, the jury returned a verdict of guilty on the charges of reckless driving and interfering with an officer, and the court found the defendant guilty on the charges of failure to display number plates and failure to carry an insurance card. The court imposed a total effective sentence of thirty days imprisonment, execution suspended, and one year of probation with special conditions.[6] The court also imposed a total fine of $440, plus fees and costs. This appeal followed.

The defendant claims that the court improperly precluded certain evidence as irrelevant. Pursuant to Practice Book § 42-15, the defendant filed a motion in limine dated November 1, 2006, seeking to introduce evidence that (1) the police officers lacked the authority to inspect the brakes on his trailer and (2) certain Bethel

---

. . . . [T]he operation knowingly of a motor vehicle with defective mechanism, shall constitute a violation of the provisions of this section. . . ."

[3] General Statutes § 14-18 provides in relevant part: "(a) (1) Each motor vehicle for which one number plate has been issued shall, while in use or operation upon any public highway, display in a conspicuous place at the rear of such vehicle the number plate. . . .

"(c) Such number plates when displayed upon motor vehicles shall be entirely unobscured and the numerals and letters thereon shall be plainly legible at all times. . . ."

[4] General Statutes § 14-13 (a) provides in relevant part: "The certificate of registration and any automobile insurance identification card for the vehicle issued pursuant to section 38a-364 shall be carried in the motor vehicle at all times when it is being operated on a public highway, except as otherwise provided by statute. . . ."

[5] General Statutes § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties."

[6] As part of the defendant's probation, the court required the defendant to have all his commercial vehicles fully insured and properly equipped for safety and to submit his commercial vehicles to random inspections.

police officers harbored a bias against him that affected the credibility of the officers who testified. After a hearing, the court denied the defendant's motion in limine, concluding that the proffered evidence was irrelevant.

Our standard of review for evidentiary rulings is well established. "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Arroyo*, 284 Conn. 597, 637, 935 A.2d 975 (2007). "We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *St. John*, 282 Conn. 260, 270, 919 A.2d 452 (2007).

"[E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . Relevant evidence is evidence that has a logical tendency to aid the trier [of fact] in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason . . . ." (Internal quotation marks omitted.) *State* v. *Ervin*, 105 Conn. App. 34, 37–38, 936 A.2d 290 (2007), cert. denied, 285 Conn. 918, 943 A.2d 475 (2008). "Moreover, [t]he proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence

is irrelevant." (Internal quotation marks omitted.) *State v. Skidd*, 104 Conn. App. 46, 63, 932 A.2d 416 (2007).

I

At the hearing on his motion in limine, the defendant proffered evidence that the police officers lacked the authority to inspect the brakes on his trailer. Specifically, he attempted to introduce the text of various sections of the General Statutes and the Regulations of Connecticut State Agencies.[7] He argues that the statutes and regulations in question did not authorize the officers to conduct an inspection of the trailer and, therefore, the officers exceeded the scope of their authority by performing the inspection. He further argues that the officers exceeded the scope of their authority by issuing the citation for reckless driving because the defective mechanism that served as the basis of the citation was revealed through their unauthorized inspection.

Normally, the test of whether a police officer is acting within the scope of his or her duties or is engaging in a personal frolic is a factual question for the jury to determine on the basis of all the circumstances of the case. *State v. Casanova*, 255 Conn. 581, 593, 767 A.2d 1189 (2001). In this case, however, the defendant's motion in limine sought a legal determination of the officers' statutory authority rather than a factual determination as to the officers' conduct. Thus, our review of the court's interpretation of the statutes cited by the defendant is plenary. See *State v. Bletsch*, 281 Conn. 5, 16, 912 A.2d 992 (2007).

Our review of the statutes in question reveals that the officers clearly and unequivocally were authorized to perform the inspection of the defendant's trailer. "[A]

___

[7] Specifically, the defendant sought to introduce General Statutes §§ 14-103, 14-162 and 14-163c, and § 14-163c-9 (a) of the Regulations of Connecticut State Agencies.

police officer has the duty to enforce the laws and to preserve the peace. Whether he is acting in the performance of his duty . . . must be determined in the light of that purpose and duty. If he is acting under a good faith belief that he is carrying out that duty, and if his actions are reasonably designed to that end, he is acting in the performance of his duties. . . . Although from time to time a police officer may have a duty to make an arrest, his duties are not coextensive with his power to arrest. [His] official duties may cover many functions which have nothing whatever to do with making arrests. . . . The phrase in the performance of his official duties means that the police officer is simply acting within the scope of what [he] is employed to do." (Internal quotation marks omitted.) *State* v. *Casanova*, supra, 255 Conn. 592–93.

The defendant does not dispute the officers' authority to enforce the statute that prohibits reckless driving, and we are not persuaded that the statutes and regulations cited by the defendant preempted or limited the officers' authority to enforce that statute by limiting their authority to inspect the defendant's trailer for a defective mechanism. Moreover, he has failed to articulate any logical connection between the legal question of the officers' authority to inspect motor vehicles and the factual question of whether the defendant knowingly operated a motor vehicle with a defective mechanism. Accordingly, the defendant's claim that the court improperly precluded the statutes and regulations from evidence is entirely without merit. We conclude that the court's preclusion of the statutes and regulations from evidence was not an abuse of discretion.

II

The defendant also attempted to introduce evidence that certain Bethel police officers held a bias against him that affected the credibility of the officers who

testified at trial. Specifically, the defendant proffered the testimony of Jeffrey Finch, Bethel chief of police, that, according to Finch, the defendant "is often at odds with the law." The defendant also proffered an investigation report by Richard Dickinson, a Bethel police lieutenant, that suggested that Conroy had used profane language during an encounter with the defendant prior to March 14, 2006. The defendant concedes that Finch, Dickinson and Conroy were not present at the scene of the March 14, 2006 traffic stop of the defendant's truck and trailer. He claims, however, that the proffered evidence demonstrated a sense of bias against the defendant among those officers that had filtered throughout the Bethel police department and affected the credibility of the officers who were at the scene and who testified during the state's case-in-chief.

"The credibility of a witness may be impeached by evidence showing bias for, prejudice against, or interest in any person or matter that might cause the witness to testify falsely." Conn. Code Evid. § 6-5. "The range of matters potentially giving rise to bias, prejudice or interest is virtually endless. . . . Because evidence tending to show a witness' bias, prejudice or interest is never collateral . . . impeachment of a witness on these matters may be accomplished through the introduction of extrinsic evidence, in addition to examining the witness directly. . . . The scope and extent of proof through the use of extrinsic evidence is subject to the court's discretion, however . . . and whether extrinsic evidence may be admitted to show bias, prejudice or interest without a foundation is also within the court's discretion. . . .

"The offering party must establish the relevancy of impeachment evidence by laying a proper foundation . . . which may be established in one of three ways:

(1) by making an offer of proof; (2) the record independently may establish the relevance of the proffered evidence; or (3) stating a good faith belief that there is an adequate factual basis for [the] inquiry. . . . However, otherwise [r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, *confusion of the issues*, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Brown*, 273 Conn. 330, 341–42, 869 A.2d 1224 (2005). "It is a reasonable exercise of judicial discretion to exclude . . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 251, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

The defendant again has failed to articulate any logical connection between the proffered evidence and the fact he claims that evidence tends to support, namely, the lack of credibility of the officers who were at the scene on March 14, 2006, and who testified at the trial. The defendant correctly asserts that Pugner's testimony laid a possible foundation for his inquiry into the potential bias of certain Bethel police officers who were not present during the March 14, 2006 traffic stop. The defendant failed, however, to demonstrate that any bias held by Finch, Dickinson or Conroy had tainted the testimony of the officers who were present at the March 14, 2006 traffic stop. None of the evidence in the defendant's proffer, or in the record as a whole, provided a factual basis to conclude that a departmentwide bias against the defendant had existed among the Bethel police, and the defendant failed to state a good faith belief that such bias had existed. See *State* v. *Brown*,

supra, 273 Conn. 341. His claim that a sense of bias had permeated the Bethel police department was purely speculative. "[I]t is entirely proper for a court to deny a request to present certain testimony that will further nothing more than a fishing expedition . . . or result in a wild goose chase." (Internal quotation marks omitted.) *State* v. *Irizarry*, 95 Conn. App. 224, 246, 896 A.2d 828, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). The court correctly barred the defendant from "trying to put the whole police department on trial." Accordingly, the court did not abuse its discretion by precluding the proffered evidence.

The judgments are affirmed.

In this opinion the other judges concurred.