## STATE OF CONNECTICUT *v.* MARK TORWICH
## (13522)

FOTI, LANDAU and SCHALLER, Js.

Argued March 20—decision released June 27, 1995

*Mary Miller Haselkamp,* assistant public defender, with whom, on the brief, was *Chris Lacadie,* legal intern, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Francis J. McQuade,* supervisory assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1),[1] breach of the peace in violation of General Statutes § 53a-181 (a) (1),[2] and threatening in violation of General Statutes § 53a-62 (a) (1) and (2).[3] The defendant claims that (1) the trial court improperly instructed the jury that it could consider constitutionally protected speech in determining whether he was guilty of the charge of breach of the peace, (2) the state presented insufficient evidence of "intent to terrorize another" to support the defendant's conviction for threatening, and (3) the state presented insufficient evidence that the officer was "acting in the performance of his duties" to support the defendant's conviction for assault of a peace officer. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At about midnight on August 8, 1993, Officer

---

[1] General Statutes § 53a-167c provides in pertinent part: "(a) A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ."

[2] General Statutes § 53a-181 provides in pertinent part: "(a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ."

[3] General Statutes § 53a-62 provides in pertinent part: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another . . . ."

Gerald Narowski of the Derby police department saw the defendant drive a van through a red light at a high rate of speed at an intersection on Route 34. Narowski turned on the siren and overhead lights of his police car and pursued the van. The defendant turned into a gas station and parked in front of the pumps. Narowski parked his police car behind the van. While the officer was calling police headquarters, the defendant got out of the van and ran toward the police car yelling, demanding to be told why he had been stopped.

While in his police car, Narowski asked the defendant for his driver's license, the van's registration, and the van's insurance card. The defendant gave the officer his driver's license and informed the officer that the van did not belong to him and that the van's registration had expired. The officer told the defendant to return to the van. The defendant returned to the van. The defendant, however, approached the police car several times asking the officer not to give him a ticket. Every time the defendant returned to the police car, the officer told him to go back to the van and to stay there. During one of these occasions, as the defendant was returning to the van, the officer heard him say "motherfucker," and "what a prick."

Officer Paul Satkowski of the Derby police department arrived to give Narowski assistance. The defendant asked Satkowski if he could do anything for him. Satkowski answered, "No." Satkowski then asked Narowski if he needed any assistance. Narowski told Satkowski that he did not anticipate any problems and that he did not require any assistance and Satkowski left the area to respond to another call.

Narowski issued the defendant a ticket for driving through a red light and for operating an unregistered motor vehicle. Narowski called for a tow truck for the unregistered van and, when the tow truck arrived, the

officer instructed the defendant that he had to get out of the van before it could be towed. The defendant became upset and started to swear at the officer. The defendant's voice attracted the attention of the customers at the gas station. When Narowski asked the defendant to sign the ticket, he refused and continued yelling. At that point, the officer arrested the defendant for breach of the peace, handcuffed him and placed him in the backseat of the police car.

While Narowski was questioning the passenger in the van, he heard a thumping noise coming from the police car and saw the defendant kicking the window of the rear door causing the window to bend out. Narowski removed the defendant from the car to search him for weapons. As Narowski was searching him, the defendant told the officer, "I'm going to get you for this" and "I'm going to kick your ass." At this point, Narowski informed the defendant that he was being charged with criminal mischief for damaging the police car. On hearing that, the defendant responded: "Oh, yeah? Well, how about assault too?" The defendant lunged at Narowski, hitting the officer in the left eye with his head, causing the eye to swell. As the two men were struggling, the defendant fell on top of the officer, injuring his arm. While he was struggling with the defendant, Narowski used the radio in his back pocket to call for assistance. Narowski and the defendant got on their feet. Narowski, thinking that the defendant was about to charge, sprayed him with pepper mace. After the defendant was sprayed, he continued to threaten Narowski, telling him that he was going to kill him and that he was going to kick his ass. Narowski put the defendant back in the police car. Shortly afterward, three police officers arrived to assist Narowski. They saw that Narowski's clothes were disordered, his face red, and he was breathing heavily. During this

time, the defendant continued to yell and kick the window of the police car.

As the defendant was being taken to the police station, he threatened Narowski several times, stating that he would find out where the officer lived and kill him. At the station, the defendant told Narowski that he would find out where he lived, burn down his house and kill him.

After leaving the station, Narowski went to the hospital to get treatment for the injuries to his arm and eye. He was still receiving treatment for his arm at the time of the trial.

I

The defendant claims that the trial court's jury instruction on the breach of the peace charge was improper because the jury was instructed that it could consider constitutionally protected speech as a basis for the conviction. We do not agree.[4] The defendant concedes that this claim was not preserved at trial. Therefore, the defendant may prevail on this claim only if it satisfies the requirements of State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under Golding, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the

---

[4] Because the defendant apparently does not press on appeal his claim raised at trial that the trial court improperly instructed the jury that it could consider the defendant's conduct, both before and after his arrest, in determining whether he was guilty of the charge of breach of the peace, that claim is considered abandoned. State v. Ramsundar, 204 Conn. 4, 16, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987).

defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "The first two conditions of *Golding* are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen*, 222 Conn. 591, 603, 610 A.2d 1177 (1992); *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852 (1994); see also *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987)." *State* v. *Walker*, 33 Conn. App. 763, 769, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1209 (1994).

We will review the defendant's claim as the record is adequate and the alleged violation is of constitutional magnitude because it involves the right to free speech. U.S. Const., amend. I; Conn. Const., art. I, §§ 4, 5, 14. We conclude, however, that the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

The defendant claims that although he was granted his requested "fighting words" instruction as part of the charge, the jury was permitted to consider protected speech in finding him guilty on the breach of the peace charge. The defendant bases his claim on the portion of the trial court's charge that instructed, "[h]owever, on the breach of peace count, you are not limited in your deliberations as to whether that crime was committed by simply language. You may utilize all of the conduct as well as the language based on what you believe happened in this case to determine whether or not the charge of breach of peace has been committed."

In considering the defendant's claim, we first note that "[t]he charge is to be read as a whole; sections are

not to be judged in isolation from the overall charge. *State* v. *Reed*, 174 Conn. 287, 305, 386 A.2d 243 (1978). The charge is not to be 'critically dissected in a microscopic search for possible error.' *State* v. *Foreshaw*, 214 Conn. 540, 548, 572 A.2d 1006 (1990). The test to be applied to any part of a charge is whether the charge as a whole presents the case to the jury in a manner to prevent injustice. *State* v. *Maturo*, 188 Conn. 591, 599, 452 A.2d 642 (1982). We review the whole charge to determine whether it sufficiently guided the jury to a proper verdict. *State* v. *Shaw*, 24 Conn. App. 493, 499, 589 A.2d 880 (1991)." *State* v. *Hester*, 28 Conn. App. 469, 472, 612 A.2d 120 (1992); *State* v. *Jenkins*, 29 Conn. App. 262, 272–73, 614 A.2d 1249, cert. denied, 224 Conn. 916, 617 A.2d 171 (1992).

We find that the trial court carefully instructed the jury as to the significance of "fighting words" in its consideration of the breach of the peace charge. The court stressed that "[i]f the words that Mr. Torwich which you find to be proven allegedly [spoke] in this case did not cross that point, then his words would be protected from criminal prosecution and you couldn't find him guilty based on those words of the breach of peace statute." The court presented a proper definition of "fighting words" to the jury, and then stressed again, "If you find based on what you believe the defendant did or did not say, that those words constituted fighting words, then you may utilize that with reference to this particular charge. If you feel that they did not reach the fighting word, you may not use the language on the breach of peace count." Accordingly, if the jury found that the words used by the defendant rose to the level of "fighting words" as defined in the court's instruction, the jury could consider those words in determining the defendant's guilt under the breach of peace statute.

"This conclusion is consistent with the 'fighting words' limitation that must be applied when the conduct sought to be proscribed consists purely of speech. *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 573, 62 S. Ct. 766, 86 L. Ed. 2d 1031 (1942); *State* v. *Anonymous (1978-4),* 34 Conn. Sup. 689, 695, 389 A.2d 1270 (1978). The *Chaplinsky* doctrine permits the state to prohibit speech that has a direct tendency to inflict injury or to cause acts of violence or a breach of the peace by the persons to whom it is directed. See *Statewide Grievance Committee* v. *Presnick,* 18 Conn. App. 316, 559 A.2d 220 (1989)." *State* v. *Indrisano,* 228 Conn. 795, 812, 640 A.2d 986 (1994). Because the conduct that the breach of the peace statute punishes may include speech, an instruction that complies with the *Chaplinsky* doctrine is required. The instruction given in this case complies with that doctrine. See *State* v. *Lavorgna,* 37 Conn. Sup. 767, 775, 437 A.2d 131 (1981); *State* v. *Anonymous (1978-4),* 34 Conn. Sup. 689, 695, 389 A.2d 1270 (1978). We conclude that the trial court properly instructed the jury on the breach of the peace charge, giving the required "fighting words" instruction.

## II

The defendant next claims that the state offered insufficient evidence of an "intent to terrorize" to support his conviction for threatening under General Statutes § 53a-62 (a) (2). We do not agree.

Section 53a-62 (a) (2) provides in relevant part: "A person is guilty of threatening when . . . he threatens to commit any crime of violence with the intent to terrorize another . . . ." "In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences

reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Greenfield,* 228 Conn. 62, 76, 634 A.2d 879 (1993); see also *State* v. *Traficonda,* 223 Conn. 273, 278, 612 A.2d 45 (1992); *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991).

It is well established that the question of intent is purely a question of fact. *State* v. *Adams,* 14 Conn. App. 119, 124, 539 A.2d 1022 (1988). "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence . . . ." (Citation omitted.) *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980); see *State* v. *Williams,* 202 Conn. 349, 356, 521 A.2d 150 (1987); *State* v. *Crump,* 201 Conn. 489, 495, 518 A.2d 378 (1986); *State* v. *Ghere,* 201 Conn. 289, 296, 513 A.2d 1226 (1986). "Intent may be and usually is inferred from conduct . . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Citations omitted; internal quotation marks omitted.) *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984), quoting *State* v. *Sober,* 166 Conn. 81, 92–93, 347 A.2d 61 (1974).

At the gas station, the defendant told Narowski, "I'm going to get you for this," and "I'm going to kick your ass." During the ride to the police station, the defendant told Narowski several times that he would find out where Narowski lived and he would kill him. At the police station, the defendant threatened Narowski that he would burn his house down, and kill him. Moreover, the defendant physically attacked Narowski at the Pet-

rol Plus gas station. The jury reasonably could have inferred from the defendant's statements and his conduct that he was threatening to commit crimes of violence and that he intended to terrorize Narowski. Construing the evidence in the light most favorable to the state and considering the inferences that could be drawn from this evidence, the jury could have found beyond a reasonable doubt that the defendant's conduct and statements were intended to terrorize Narowski. "We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and gauge their credibility." *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

## III

The defendant next claims that the state presented insufficient evidence to show that Narowski was "acting in the performance of his duties" to support the defendant's conviction for assault of a peace officer. We do not agree.

General Statutes § 53a-167c (a) provides in pertinent part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ." We apply the same standard set out in part II when reviewing the sufficiency of the evidence claim. See *State* v. *Greenfield,* supra, 228 Conn. 76.

"If [the officer] is acting under a good faith belief that he is carrying out [his] duty, and if his actions are reasonably designed to that end, he is acting in the per-

formance of his duties." (Internal quotation marks omitted.) *State* v. *Biller*, 5 Conn. App. 616, 620, 501 A.2d 1218 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146, cert. denied, 478 U.S. 1005, 106 S. Ct. 3296, 92 L. Ed. 2d 711 (1986). "The phrase 'in the performance of his official duties' means that the police officer 'is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own.' " *State* v. *Privitera*, 1 Conn. App. 709, 722, 476 A.2d 605 (1984). The question of whether a police officer was acting in good faith in the performance of his duties is a factual question "for the jury to determine on the basis of all the circumstances of the case and under appropriate instructions from the court." Id.

The defendant asserts that Narowski was engaging in a personal frolic from the point when he placed the defendant under arrest for breach of the peace. He claims that Narowski was provoked to violence by the remarks made by the defendant. The defendant further argues that Narowski initiated the physical confrontation by taking the defendant out of the car when the defendant began kicking the window, instead of controlling the situation by putting the seat belt on the defendant. Narowski explained that he took the defendant out of the car so he could search him for weapons after observing the defendant kicking the window of the car. Moreover, after Narowski informed the defendant that he would be charged with criminal mischief, the defendant stated, "Well, how about assault too?" before he butted the officer in the eye with his head. Construing the evidence in the light most favorable to the state and considering the inferences that could be drawn from this evidence, the jury could have found beyond a reasonable doubt that Narowski was acting under a good faith belief that he was performing his duty in a reasonable manner when he took the defend-

ant out of the car to search for weapons and that the defendant was guilty of assaulting him. "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Grant*, 219 Conn. 596, 604, 594 A.2d 459 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.