# STATE OF CONNECTICUT *v.* PAUL CRUDUP
## (AC 23263)

Bishop, DiPentima and Dupont, Js.

Argued September 10, 2003—officially released January 27, 2004

*Nicole Donzello* and *Robert Rehr*, certified legal interns, with whom was *G. Douglas Nash*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John C. Lion*, assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. After a jury trial, the defendant, Paul Crudup, was convicted of one count of breach of the peace in violation of General Statutes (Rev. to 1999) § 53a-181 (a) (3) and one count of threatening in violation of General Statutes (Rev. to 1999) § 53a-62 (a) (2).[1] The conviction and the sentence imposed stem from an event occurring on December 30, 2001.[2] On appeal, the defendant claims that (1) the sentence violates the double jeopardy clause of the fifth amendment to the United States constitution and the Connecticut consti-

---

[1] General Statutes (Rev. to 1999) § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm . . . he . . . (3) threatens to commit any crime against another person or his property . . . ."

General Statutes (Rev. to 1999) § 53a-62 (a) provides in relevant part: "A person is guilty of threatening when . . . (2) he threatens to commit any crime of violence with the intent to terrorize another . . . ."

[2] The amended long form information consisted of four counts. Counts one and two concerned a telephone conversation on the night of December 29, 2001. The defendant was found not guilty of those counts, and guilty of counts three and four, the subject of this appeal.

tution's guarantees against double jeopardy, (2) the trial court incorrectly charged the jury on breach of the peace and threatening because it failed to provide a mandated judicial gloss and (3) the threatening statute, § 53a-62 (a) (2), is unconstitutionally vague. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was the father of a child from a relationship with his one time girlfriend, Sherrell Jones. At the time of the alleged incidents, Jones, her son (from a different relationship), the defendant's daughter and the victim, Terrance Jackson, lived together on the first floor of a three-family house in Hamden. The defendant knew of the living arrangement and knew that Jackson had been convicted of a felony.[3] The defendant also learned that Jackson was developing a close relationship with his daughter and that the defendant's daughter had begun to call Jackson "daddy."

On December 29, 2001, the defendant called the Jackson-Jones residence. After several telephone calls, during which Jackson hung up at least twice after partial conversations, the defendant and Jackson agreed to talk out their problems. They agreed to meet at the "mudhole" (a specific part of Hamden) the next day. During the telephone conversation, the defendant allegedly said to Jackson, "I ought to pop you both right now," or words to that effect, while on the telephone.[4]

---

[3] Jackson previously was convicted of sexual assault in the first degree, burglary and a "subsequent" sexual assault. The fact that Jackson had been convicted of a felony and had served time in prison was in evidence. The exact nature of his crimes was not in evidence, although the defendant knew that Jackson had been convicted of sexual assault.

[4] Three witnesses testified at trial, the defendant, Terrell Jackson and Jones. The defendant denied making any sort of statement such as, "I ought to pop you both right now." The defendant was found not guilty of any crime involving the telephone conversation of December 29, 2001. The conversation, however, served as a background for the conviction arising from the events of the next day. See State v. DeLoreto, 265 Conn. 145, 157, 827 A.2d 671 (2003).

The next day, December 30, 2001, instead of meeting at the mudhole, the defendant came unannounced to the Jackson-Jones household by car. There were two other men in the car. The defendant knocked on the door of the apartment. Jackson answered, and the two had a conversation on the front lawn of the residence, talking over the same problem they had discussed the night before, specifically, that the defendant's daughter should not be calling Jackson "daddy" and that the defendant "didn't condone that kind of stuff" (referring to Jackson's previous convictions). The defendant put his hand in his pocket during the conversation, and Jackson felt threatened and called the police. In the course of and toward the end of the conversation, the defendant again said to Jackson, "I should pop you both right now," and, on leaving, said, "I see you. I see you."[5]

## I

The defendant claims that his conviction for threatening in violation of § 53a-62 (a) (2) and breach of the peace in violation of § 53a-181 (a) (3) violates the proscription of the fifth amendment to the United States constitution and the Connecticut constitution's guarantees against double jeopardy[6] because he received two punishments for one act. Neither the parties nor we are aware of any appellate decision that has decided that precise issue.[7] If the defendant is correct, the sen-

---

[5] The defendant testified that he never uttered those words or threatened the victim at all, which the jury apparently did not believe.

[6] The Connecticut constitution has no specific double jeopardy provision, but the right to protection against double jeopardy is implicit in the due process guarantees of the state constitution. *State* v. *Miranda*, 260 Conn. 93, 119, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002).

[7] We are aware of three appellate cases in which the defendant was found guilty of both breach of the peace and threatening, but no double jeopardy claim was made in any of those cases. See *State* v. *Borrelli*, 227 Conn. 153, 629 A.2d 1105 (1993); *State* v. *Wayne*, 60 Conn. App. 761, 760 A.2d 1265 (2000); *State* v. *Torwich*, 38 Conn. App. 306, 661 A.2d 113, cert. denied, 235 Conn. 905, 665 A.2d 906 (1995).

tence on the breach of the peace charge must be vacated and the breach of the peace conviction must be merged with the threatening conviction. See *State* v. *Chicano*, 216 Conn. 699, 725, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). That claim, therefore, will be discussed before any claimed infirmity in the court's charge on breach of the peace because the latter claim would be rendered moot if the defendant's claim of double jeopardy were established.

The defendant did not preserve his claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Such review is warranted. A defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial; see *State* v. *Snook*, 210 Conn. 244, 263, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); even if the sentence for one crime was concurrent with the sentence for the second crime. *State* v. *John*, 210 Conn. 652, 694–95, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); *State* v. *Amaral*, 179 Conn. 239, 241–42, 425 A.2d 1293 (1979).[8] Because the claim presents an issue of law, our review is plenary. See *State* v. *Butler*, 262 Conn. 167, 174, 810 A.2d 791 (2002).

The double jeopardy clause of the fifth amendment to the constitution "protects against . . . multiple punishments for the same offense." (Internal quotation marks omitted.) *Brown* v. *Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). That is one of many permutations of a double jeopardy claim. A conclusion

---

[8] The defendant was sentenced to three years imprisonment on the conviction of threatening, execution suspended after one year, with three years probation, and sentenced to six months imprisonment on the charge of breach of the peace, with the sentences to run concurrently.

that double jeopardy exists requires the presence of two conditions. First, both crimes must arise out of the same incident. Here, counts three and four of the amended long form information, the counts on which the defendant was convicted, both alleged that the crime took place "on or about the 30th day of December, 2001, during the afternoon hours . . . ." Thus, the first prong of the double jeopardy analysis is met. See *State* v. *Devino*, 195 Conn. 70, 74, 485 A.2d 1302 (1985); *State* v. *Flynn*, 14 Conn. App. 10, 17, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988).

The second condition for a double jeopardy violation is that the charged crimes must be the same offense. *State* v. *Devino*, supra, 195 Conn. 74. The test for whether the same act or transaction constitutes a violation of two distinct statutes is whether each statute requires proof of a fact that the other does not. *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). If the two crimes stand in the relationship of greater and lesser included offenses, then the lesser offense is by definition the same as the greater for purposes of double jeopardy. Phrased differently, the test as to the second condition is whether it is possible to commit the greater offense, in the manner described in the information, without first having committed the lesser offense. *State* v. *Miranda*, 260 Conn. 93, 125, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). In conducting the inquiry, we look to statutes and the information, not to the evidence presented at trial. *State* v. *Denson*, 67 Conn. App. 803, 809, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002). The issue, though constitutional, becomes an exercise in statutory construction. *State* v. *Rawls*, 198 Conn. 111, 120, 502 A.2d 374 (1985).

The *Blockburger* analysis, however, is not controlling when the legislative intent is clear on the face of the statute. It is also not controlling when another section of the same statute or another statute dictates that separate penalties are warranted because cumulative punishment was intended by the legislature. *State* v. *Greco*, 216 Conn. 288, 293, 579 A.2d 84 (1990); see also *State* v. *Woodson*, 227 Conn. 1, 11–13, 629 A.2d 386 (1993). A *Blockburger* analysis would not be necessary if the legislative intent was to punish both crimes separately. See *Garrett* v. *United States*, 471 U.S. 773, 779, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985).

There is no indication that the legislature did not intend to create separate crimes prohibited by §§ 53a-181 (a) (3) and 53a-62 (a) (2). If two subparagraphs in one statute can be regarded as separate crimes, it follows that two distinct statutes can prohibit separate crimes, given no legislative intent to the contrary. See *State* v. *Woodson*, supra, 227 Conn. 11–12. The societal harm of a crime of violence is a harm different from that of a crime intended to annoy or to inconvenience. See id., 12. We cannot ascribe definitively, however, in this case, an intent of the legislature to create one crime or two, or to bar or to allow prosecution and separate penalties for both crimes.

We must consider, therefore, whether, as charged in the information, the defendant could threaten to commit a crime of violence, namely, assault, with the intent to terrorize another, without first having threatened to commit, with any one of three different intents, any crime against a person,[9] and whether each statute requires proof of a fact that the other does not.

---

[9] As dicta, in *State* v. *Marsala*, 1 Conn. App. 647, 651 n.6, 474 A.2d 488 (1984), it was stated that the "intent to harass, annoy or alarm" as provided in General Statutes § 53a-183 did not make that crime a lesser included crime of the crime of threatening under General Statutes § 53a-62 (a). The language of § 53a-183 is almost identical to that of § 53a-181 (a) (3) (breach of the peace).

The defendant in count three was charged as follows. He "threatened to commit any crime of violence to wit: assault, with the intent to terrorize another . . . ." In count four, it was charged that with "the intent to cause inconvenience, annoyance, or alarm, [he] threatened to commit any crime against another person . . . ."

Thus, the third count of the information limits the language of § 53a-62 (a) (2) to a threat to commit a crime of violence against another, specifically, to the crime of assault, whereas the fourth count does not require a threat of any crime of violence. The third count requires an intent to terrorize another, whereas the fourth count requires an intent to cause inconvenience, annoyance or alarm. Both counts require a threat. Count four may be proven if only one of three intents are present, namely, intent to cause inconvenience, annoyance or alarm. The three different intents are alternate ways in which breach of the peace, as charged, could be committed. The information did not require the state to prove all of the ways (the intents) in which breach of the peace could have been committed. For example, based on the information, the state did not need to prove that the defendant's intent was to alarm the victim, although the defendant would be guilty of violating § 53a-181 (a) (3) if he, with the intent to *annoy*, threatened to commit a crime against another. The defendant did not first need to intend to annoy to intend to terrorize. The crime of breach of the peace, as charged, therefore, is not a lesser included crime of threatening.

The breach of the peace crime, as charged, required proof of a threat with an intent to annoy (or inconvenience or alarm) the victim; the threatening crime, as charged, required proof of an intent to terrorize the victim. Those are different intents, and at least two of the intents required in the breach of the peace statute do not first need to be present to have an intent to

terrorize. Each of the two crimes, as charged,[10] requires proof of a fact that the other does not. The two crimes have disparate elements, and, as charged, were separate crimes. The defendant's punishment for both crimes, therefore, did not violate the double jeopardy clause of the federal constitution or violate the Connecticut constitution.

## II

The defendant claims that the court incorrectly charged the jury on breach of the peace and threatening. The defendant did not except to the charge and seeks review under *State* v. *Golding*, supra, 233 Conn. 239–40. It "is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged." *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988). Review is warranted because the record is sufficient and the claims are constitutional in nature.

The defendant asserts that *State* v. *Wolff*, 237 Conn. 633, 670, 678 A.2d 1369 (1996), and *State* v. *Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994), require a precise judicial gloss to be applied to both statutes because, as was stated in *Indrisano*, the intent element of a crime is subject to arbitrary application without additional definitional language in the jury charge. Both of the crimes with which the defendant was charged required a showing of specific intent. We first discuss the defendant's claim as to the crime of breach of the peace.

*Indrisano* analyzed the varying interpretations of the mens rea language of the disorderly conduct statute,

---

[10] Although General Statutes (Rev. to 1999) § 53a-181 (a) provides that a person may be guilty of breach of the peace if he or she commits the crime with the intent of "recklessly creating a risk" of inconvenience, annoyance or alarm, the state amended the information to delete that portion of the statute. The state also did not charge the defendant with the threat to commit a crime against property, which is included in the complete § 53a-181 language.

General Statutes § 53a-182. The language of § 53a-182 (disorderly conduct) and General Statutes (Rev. to 1999) § 53a-181 (breach of the peace) are identical as to intent. Specifically, both crimes require intent to "cause inconvenience, annoyance or alarm . . . ."[11] Therefore, as stated in *State* v. *Wolff*, supra, 237 Conn. 670, the need to apply interpretative gloss to the disorderly conduct statute, as determined in *Indrisano*, applies equally to the breach of the peace statute.

The *Indrisano* court interpreted the mens rea element of the disorderly conduct statute as follows: "[T]he predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." *State* v. *Indrisano*, supra, 228 Conn. 810. The trial court in the present action charged the jury slightly differently, as follows: "[T]he predominant intent must be to cause what a reasonable person operating under contemporary circumstances would consider a threat to commit a crime against the person of another." The defendant claims that this adaptation of the *Indrisano* gloss was incorrect. We disagree.

A charge to a jury is not to be critically dissected for possible inaccuracies. It should be tested instead to determine its probable effect on the jury in guiding it to the correct verdict. *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998). As long as the instructions

[11] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, *with intent to cause inconvenience, annoyance or alarm*, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise . . . ." (Emphasis added.) The emphasized words are the identical words of the intent element of General Statutes (Rev. to 1999) § 53a-181 (a) (3). See footnote 1.

are correct in law, adapted to the issues and sufficient for the guidance of the jury, they are proper. See *State v. Dyson*, 217 Conn. 498, 501, 586 A.2d 610 (1991).

The gloss provided here was sufficient. It was guided by both *Indrisano* and *Wolff*, and adapted to the specific facts of the case. Although the *Indrisano* gloss was not repeated precisely, it did not have to be. The court adapted the gloss to fit the circumstances of the charge. The court's substitution of the words a "predominant intent . . . to cause what a reasonable person under contemporary circumstances would consider a threat to commit a crime against the person of another" adapted the gloss to fit the facts of the case. In the present case, there was no evidence of any disturbance or impediment to a lawful activity. Furthermore, *Indrisano* was a trial to the court and did not involve jury instructions so that there was no need to evaluate an instruction to the jury against the backdrop of the evidence presented to the jury. The gloss necessary, as noted in *State* v. *Wolff*, supra, 237 Conn. 670, is "interpretive" gloss, which is the necessary clarification of a statute, depending on the particular facts and the particular situation. Here, the precise gloss sought by the defendant was unnecessary.

The defendant also contends that the court substituted "contemporary circumstances" for the language "contemporary community standards" used in *Indrisano* and *Wolff*. Underlying the judicial gloss in those cases was the need to be certain that the conduct for which the crimes were charged did not fall under the umbrella of constitutionally protected speech or expression. Both *Indrisano* and *Wolff* involved potentially protected or potentially obscene speech. Although neither opinion was limited to its facts, both decisions applied the gloss in cases involving constitutionally protected expression.[12]

---

[12] The phrase "contemporary community standards" is taken from obscenity law jurisprudence. See *Ashcroft* v. *American Civil Liberties Union*, 535

In devising the gloss, the *Indrisano* court specifically referenced and used obscenity law jurisprudence. *State* v. *Indrisano*, supra, 228 Conn. 810. The court concluded that the language "inconvenience, annoyance or alarm," was intended by the legislature to be that as perceived by a reasonable person operating under contemporary community standards. Id. It also relied heavily on *Colten* v. *Kentucky*, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972), a case that interpreted a Kentucky statute with remarkably similar wording (inconvenience, annoyance, alarm) to avoid a statutory conflict with the exercise of constitutionally protected expression. See *State* v. *Indrisano*, supra, 807–808.

*Wolff* involved a confrontation between police and a private person, and there was contention over what exactly was said. Failure to provide the gloss *at all* allowed the jury to convict no matter what the jurors believed was said. The court concluded that among the things that might have been said, one version would be constitutionally protected and, therefore, the court vacated the conviction. *State* v. *Wolff*, supra, 237 Conn. 671.

There is no such dispute over possible wording here. The victim testified that the defendant said, "I should pop you . . . ." The defendant asserts that he did not say the words or anything approximating them. There is no constitutional protection for words of that nature. See *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 573, 62 S. Ct. 766, 86 L. Ed. 1031 (1942); see also *State* v. *DeLoreto*, 265 Conn. 145, 154–56, 827 A.2d 671 (2003). It is therefore doubtful, based on the evidence, including the words and the conduct of the defendant, that the "contemporary community standards" portion of the charge was even necessary. Those words come from

U.S. 564, 570, 122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002); see also *Miller* v. *California*, 413 U.S. 15, 24, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973).

obscenity law jurisprudence, and are designed to differentiate between constitutionally protected speech and obscene speech. See *State* v. *Indrisano*, supra, 228 Conn. 810.

The alleged difference between "contemporary circumstances" and "contemporary community standards" is no real difference at all, as applied to this case. The defendant concedes in his brief that the charge was needed to apply the objective "reasonable person" standard to the threat to determine if the act he committed rose to the level of a threat to commit any crime against another person. The court's charge conveyed that objective standard to the jury.

The defendant also contends that the court's charge to the jury regarding the threatening statute lacked the necessary judicial gloss because it was vague and insufficient for guidance.[13] The defendant was charged in the information with a threat to commit a crime of violence, assault, with the intent to terrorize another, Jackson. The charge accurately outlined the elements of the threatening count.[14]

---

[13] The defendant does not claim, as he does in connection with the breach of the peace charge, that the alleged missing gloss is found in the words of any particular appellate decision.

[14] On the threatening count, the court charged: "For you to find the defendant guilty of the charge of threatening, the state must prove the following elements beyond a reasonable doubt: That the defendant threatened a crime of violence, that the person or persons threatened is identified with specificity. In other words, you can identify exactly who was threatened and that the defendant intended by his conduct to terrorize that person. A threat is the expression through words or conduct of an intention to injure another person. A crime of violence is one in which physical force is exerted for the purpose of violating, injuring or damaging or abusing a person. Thus, in order for you to find that the defendant threatened to commit a crime of violence, you must be satisfied that the defendant behaved in a manner that indicated his intent to commit such a crime.

"In addition to proving that the defendant threatened the victim with a crime of violence, the state must also prove that the defendant intended with this threat to terrorize the victim. It is not the danger or risk of injury, but the intent to terrorize that is essential to this crime. The state is not required to prove that the victim was actually terrorized by the threat. Intent

The court's charge closely matched the charge for threatening contained within a respected jury instruction manual. See R. Leuba & R. Fracasse, Connecticut Selected Jury Instructions Manual (1998) § 6.20. Compared with the text of the court's charge, there was practically no difference. Even without the imprimatur of such a jury instruction, the charge would withstand attack. The defendant's basic complaint is that "terrorize" was not defined for the jury. In common parlance, "terror" means to scare or to cause intense fear or apprehension. See *State* v. *Dyson*, 238 Conn. 784, 797–98, 680 A.2d 1306 (1996). We conclude that the jury instructions, taken as a whole, did not mislead the jury.

### III

The defendant claims that the threatening statute is unconstitutionally vague. We disagree.

There are two parts to the defendant's vagueness challenge. He asserts facial vagueness and vagueness as applied to the facts of the case. To prevail on the ground that § 53a-62 (a) (2) is facially vague, "the defendant must demonstrate that the statute has no core meaning. . . . [A] determination that the statute is not vague with respect to at least one application will defeat [the] facial challenge." Id., 797. In other words, if a court concludes that the statute is sufficiently clear to apply it to at least one situation, there can be no facial vagueness challenge, as the statute is deemed to have a core meaning.

---

relates to the condition of mind of the person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result or conduct when his conscious objective is to cause such result or to engage in such conduct. I've already charged you with the meaning of intent.

"If you find that the state has proven beyond a reasonable doubt each of the elements of the crime of threatening, then you shall find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, then you shall find the defendant not guilty."

The holding of *Dyson* defeats the defendant's facial vagueness challenge. In *Dyson*, the language, "intent to . . . terrorize," in General Statutes § 53a-92 (a) was challenged as vague. Our Supreme Court decided that the language was sufficiently clear to counter a challenge. Although *Dyson* involved a vagueness analysis of the statute prohibiting kidnapping in the first degree, the challenged language ("intent to . . . terrorize") in *Dyson* was identical and was identically applied in this case. That one application of the language "intent to . . . terrorize" defeats the defendant's claim of facial vagueness. See *State* v. *Dyson*, supra, 238 Conn. 799–800.

The defendant also contends that § 53a-62 (a) (2) is vague as applied to him. He claims that his words, whatever they were, reflected an *intent* to exercise his legal duty to protect his child, not any intent to terrorize Jackson. He further contends that the statute interferes with his right to free expression with regard to that legitimate activity. We are not persuaded.

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten* v. *Kentucky*, supra, 407 U.S. 110.[15] "The underlying principle is that no man shall

---

[15] The defendant in *Colten* was convicted of violating Ky. Rev. Stat. Ann. § 437.016 (1) (f) (Sup. 1968), which provides in relevant part: "(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . . . " (Internal quotation marks omitted.) *Colten* v. *Kentucky*, supra, 407 U.S. 108. The analysis in *Colten* is applicable to the present appeal, although the crime at issue in that case was not the crime of threatening at issue here in the defendant's claim of vagueness.

be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States* v. *Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954).

In this case, we conclude that citizens should be able to obey the statute prohibiting threatening with no difficulty in understanding it. See *Colten* v. *Kentucky*, supra, 407 U.S. 110. General Statutes § 53a-62 (a) (2) provides that one may not threaten to commit a crime of violence with the intent to terrorize another person. Those are plain words with simple definitions. Although the intent language may potentially leave a finder of fact in a difficult position to ascertain the defendant's exact thoughts, or intent, almost all fact finders in any criminal proceeding face that difficulty when intent is at issue. Simply because a fact finder has some difficulty in finding one element of a crime does not convert an otherwise constitutionally valid statute into a vague one.

The defendant is correct that he may have a legal duty to protect his child; see *State* v. *Miranda*, 245 Conn. 209, 228–30, 715 A.2d 680 (1998) (recognizing duty to protect extends beyond that in traditional roles), on appeal after remand, 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002); but threatening Jackson was not a legal means of exercising his claimed duty. The defendant asserts that the statute as applied to him criminalizes his legal duty to protect his child, and that his conduct and words involved his free expression concerning legitimate activity. The proper test for determining if a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. *State* v. *DeLoreto*, supra, 265 Conn. 164–67. The test is objectively applied to the actor's conduct and judged by a reasonable per-

son's reading of the statute, and does *not* involve the victim's perception.[16]

The defendant came to the victim's home unannounced, with two unknown persons, and talked of "popping" the victim, as he had allegedly spoken of doing the evening before. The defendant's daughter was not at the scene and not in any present danger. Under the circumstances, a reasonable person would foresee that the statements would be interpreted by Jackson as a serious expression of the defendant's intent to assault Jackson. Id., 157. We conclude that the threatening statute was not vague as applied to the facts.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] The defendant cites *State* v. *Jacobowitz*, 182 Conn. 585, 592, 438 A.2d 792 (1981), for the proposition that the victim's perception is at issue in a threatening charge. *Jacobowitz*, however, concerned General Statutes § 53a-62 (a) (1), which does involve the victim's perception. Section 53a-62 (a) (2) does not involve the victim's perception.